**UNITED STATES of America**

v.

**M. H. BIGAN.**

**Civ. A. No. 16282.**

United States District Court
W. D. Pennsylvania.
Jan. 23, 1959.

Thomas J. Shannon, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Vincent M. Casey, Margiotti & Casey, Pittsburgh, Pa., for defendant.

MARSH, District Judge.

In this case plaintiff seeks injunctive relief against the defendant. The case was tried to the court without a jury. The court makes the following findings of fact, conclusions of law and decree:

### Findings of Fact

1. The Allegheny River is and was during all times here material a navigable stream of the United States, which flows into the Ohio River in the Commonwealth of Pennsylvania, and the existing system of eight locks and dams on the Allegheny River affords slack water navigation from Pittsburgh, Pennsylvania, to above East Brady, Pennsylvania, a distance of about 72 miles, and its waters are used for navigation by towboats, pleasure craft and other vessels.

Motor boats up to 40 feet in length dock at Rexhide Rubber Company on the opposite side of the river from the defendant's former stripping operation.

Pleasure craft can and do navigate the river at Mile Post 68.5 and upstream to at least Mile Post 72 at East Brady.

At Mile Post 68.5 the river is approximately 1000 feet wide (Government Exhibit 32).

There is a commercial dock supplying gasoline to these craft at Mile Post 69.

2. The defendant, M. H. Bigan, has been engaged in the business of stripping coal since 1943, and about June 1, 1956, began an operation to strip coal owned by Edward Dewey by the open pit method on the right side of the Allegheny River facing downstream at a distance of approximately 68.5 miles above Pittsburgh, Pennsylvania, within this judicial district. The stripping operation was on top of a wooded hill adjacent to the Allegheny River.

3. The coal seam was at an elevation approximately 500 feet higher than the bed of the river, and from high water mark, following the slope of the hill to the adjacent edge of the coal vein, approximately one-fourth of a mile.

4. The Commonwealth of Pennsylvania owned the land overlying the coal which defendant was stripping; the side of the hill adjacent to the river above high-water mark was owned by parties other than the defendant.

5. In removing the overburden on the river side of the project, the defendant deposited the said overburden on an abandoned mine road which was variously estimated by defendant's witnesses as being between 35 and 100 feet below the brow of the hill. This road was about 100 feet wide and paralleled the river for some distance. Other than the aforesaid road, there was nothing except trees and underbrush to prevent the overburden from falling down the hillside, and, if in sufficient quantity, into the river itself.

6. Prior to July 25, 1956, Chester C. Hildebrand, Lock Master at Lock 9 in

the Allegheny River, on river patrol observed defendant's shovel working on the hill above the river. He saw the shovel placing material consisting of dirt and stones on top of the hill and observed some of the dirt and stones falling down the hillside into the river. He made out a written report and telephoned a representative of the Army Engineers.

7. Acting on the telephone call, Regis C. Dean, a navigation inspector, on July 25, 1956, proceeded up to a point on the river opposite the defendant's stripping operation and observed directly below said operation two swaths barren of trees, and at the base of each swath a pile of earth and stones closely adjacent to the river below the stripping operation. He proceeded to the operation itself and observed that large quantities of material had been deposited on the top of the hill. He talked with defendant's superintendent, Schmidt, and advised him it was unlawful to dump into the river, and gave him a copy of §§ 13 and 16 of the Rivers and Harbors Act of 1899, 33 U.S.C.A. §§ 407, 411. He further observed that a bar extended out into the river about 50 feet directly below the stripping operation and extending out from the upstream pile of debris at the bottom of the hill. This bar consisted of stone, earth, trees and limbs of trees. He inspected the operation again on August 16, 1956 and observed that the stripping equipment had been moved off, and the top of the hill leveled, but the condition at the bottom of the hill had not changed, and the bar remained in the river.

8. A cloudburst occurred on or about June 22, 1956, which was the worst in the area since 1910; it encompassed the area of the stripping operation. The water from this cloudburst caused considerable quantities of the excavated overburden deposited by defendant on the aforesaid mine road to move toward the river. This movement of the overburden displaced some ground on the hillside and uprooted the trees in its path and pushed same toward the river.

The two piles at the bottom of the hill closely adjacent to the river were formed by stones which fell down the hillside from shovel action, by excavated overburden, and by earth and trees from the hillside which moved down as a result of the cloudburst.

The bar in the river was formed by stones, earth and trees; all of the trees in the river came from the hillside and the trees and some earth from the hillside were pushed into the river by the force of the descending excavated overburden. From the evidence we find as a fact that some of the stones and earth from the excavated overburden were included in the material forming the bar in the river.[1]

9. The bar aforesaid has existed in the river since July 25, 1956 to about one week prior to trial and probably still exists.

10. The report of the District Engineer (Exhibit 33) that the obstruction constitutes a hazard to navigation and affects adversely the navigability of the Allegheny River was not shown to be arbitrary or capricious.

11. The acts of the defendant resulting in the piles on the bank and the bar in the river were performed without the consent of Congress and without the consent, approval or permission of the Secretary of the Army of the United States and/or the Chief of Engineers, United States Army.

12. Since July 25, 1956, numerous demands, oral and in writing, have been made upon defendant, and his agents and representatives, by the Office of the District Engineer, Pittsburgh District, Corps of Engineers, United States Army, directing the removal of the obstruction and the deposit of materials and every portion thereof and restoration of the said river bank to its original and natural state. (Government's Exhibits 28, 28a, 29, 29a.)

1. See Testimony, pp. 12, 13, and also pp. 48 and 51.

13. Defendant caused the excavated material to be deposited on the road on the side of the hill adjacent to the navigable river where the same was liable to be washed down the hill and into the river by a storm or flood.

14. Prior to the filing of the complaint, defendant abandoned his stripping operation and removed his excavating equipment. There is no evidence that he intends to resume stripping operation at any place adjacent to the Allegheny River.

15. The piles of material on the bank of the river do not constitute a public nuisance.

16. The bar in the river constitutes a public nuisance in fact.

### Discussion

█ In this case the plaintiff requested that prohibitory and mandatory injunctions issue against defendant. The complaint is grounded on alleged violations of §§ 9, 10, 12 and 13 of the Rivers and Harbors Act of March 3, 1899, 33 U.S.C.A. §§ 401, 403, 406, 407. It is the opinion of the court that the prayer for both types of injunction should be denied. We see no necessity for discussing § 9, 33 U.S.C.A. § 401,[2] inasmuch as there is no construction involved such as that proscribed by this section.

*Did defendant violate § 10, 33 U.S.C.A. § 403?*

██ We do not think defendant violated § 10, which provides as follows:

"The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any * * * navigable river, or other water of the United States * * * except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity * * * of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same."

This section is penal and should be strictly construed.[3] It implies an intentional act as distinguished from a negligent or careless act to create an obstruction or to alter or modify the condition or capacity of the river. United States v. Bridgeport Towing Line, Inc., D.C.Conn.1926, 15 F.2d 240.[4] Compare United States v. Republic Steel Corporation, D.C.N.D.Ill.E.D.1957, 155 F.Supp. 442, where defendants deliberately and continually violated § 10 as well as § 13.

It was not shown by the evidence that the defendant or his employees willfully intended to create an obstruction to the navigable capacity of the river or to alter or modify the condition or capacity of its channel. On the contrary, the evidence shows that defendant's shovel operator

---

2. "It shall not be lawful to construct or commence the construction of any bridge, dam, dike, or causeway over or in any * * * navigable river, or other navigable water of the United States until the consent of Congress to the building of such structures shall have been obtained and until the plans for the same shall have been submitted to and approved by the Chief of Engineers and by the Secretary of the Army."

3. H. Christiansen & Sons v. City of Duluth, 8 Cir., 1946, 154 F.2d 205, 207;

cf. Yates v. United States, 354 U.S. 298, pages 304, 310, 77 S.Ct. 1064, 1 L.Ed.2d 1356; United States v. Resnick, 1936, 299 U.S. 207, 209, 57 S.Ct. 126, 81 L.Ed. 127; United States v. Calamaro, 3 Cir., 1956, 236 F.2d 182, 185, affirmed 354 U.S. 351, 77 S.Ct. 1138, 1 L.Ed. 1394.

4. It is to be noted that the penalty section (§ 12, 33 U.S.C.A. § 406) in authorizing a mandatory injunction uses the word "erected" which implies that an intentional rather than a negligent act was intended by Congress.

intended to deposit the excavated material on the mine road and negligently or accidentally caused some dirt and stones to fall down the hillside into the river. An obstruction to navigation or alteration of the channel was not reasonably to be apprehended from the performance of the acts which defendant actually intended.

Moreover, it was not shown that the dirt and stones which fell into the river as a consequence of shovel action actually created an obstruction to navigation or altered the channel, although they may have contributed thereto. Rather, the evidence shows that the obstruction and alteration were caused by a cloudburst or heavy rains which washed considerable excavated material from the road down the hillside, which in turn uprooted trees and underbrush and pushed them and earth from the hillside to the river bank and thence into the river.

*Did the defendant violate the first part of § 13, 33 U.S.C.A. § 407?*

This section is also penal and should be strictly construed. See footnote 3. The first part of § 13 provides:

"It shall not be lawful to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited * * * from the shore * * * any refuse matter * * * into any navigable water of the United States. * * *"

A violator is subject to criminal prosecution and the penalties imposed by § 16, 33 U.S.C.A. § 411.

■ The defendant undoubtedly violated the first part of § 13 by negligently causing, suffering or procuring stones and earth from the excavated overburden to be discharged or deposited in the river from the shore. Cf. La Merced, 9 Cir., 1936, 84 F.2d 444.

However, on notice, defendant abandoned his stripping operation and there is no evidence that he intends to resume the operation in the future. As stated

in Aerated Products Co. of Philadelphia, Pa., v. Department of Health of N. J., 3 Cir., 1947, 159 F.2d 851, 854:

"It is elementary that a court of equity will not grant an injunction to restrain one from doing what he is not attempting and does not intend to do." [5]

Therefore, a prohibitory injunction will not be issued. Compare Hecht Co. v. Bowles, 1944, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754.

■ Since there is no express provision in § 16 authorizing the issuance of a mandatory injunction to compel the removal of the unlawful deposit in the river, as is specifically provided in § 12 for a violation of §§ 9, 10, and 11, we think the court is without statutory authority to issue it. Compare United States v. Wilson, 2 Cir., 1956, 235 F.2d 251.

*Did the defendant violate the second part of § 13, 33 U.S.C.A. § 407?*

A strict construction of the second part of § 13 makes it doubtful that defendant violated it. The second part of § 13 provides:

"[A]nd it shall not be lawful to deposit, or cause, suffer, or procure to be deposited material of any kind in any place *on the bank* of any navigable water * * * where the same shall be liable to be washed into such navigable water, either by ordinary or high tides, or by storms or floods, or otherwise, *whereby navigation shall or may be impeded or obstructed.*" (Emphasis supplied.)

■■ A "bank" of a river may be defined as that elevation of land which confines the waters of the river in their natural channel at their highest flow. Paine Lumber Co. v. United States, 7 Cir., 55 F. 854, 864. "In its popular signification, it is the immediate drainage region of lands contiguous to streams. The word 'shore' is sometimes

5. See also, Bowles v. Sauer, D.C.W.D.Pa. 1947, 6 F.R.D. 571, 579; Walling v. Todd, D.C.M.D.Pa.1943, 52 F.Supp. 62, 65; Rinderknecht v. Toledo Association of Credit Men, D.C.N.D.Ohio W.D.1935, 13 F.Supp. 555, 560.

used synonymously with 'bank'". 93 C.J.S. Waters § 72, p. 749. How far inland a bank extends probably depends upon the facts and circumstances of each case. We doubt that a road on a hillside nearly 500 feet high and approximately a quarter of a mile inland from the edge of the river could fairly be considered to be a "bank" of the river. Surely, if the river water ever rose to the height and distance of this road, it would be held *to have overflowed its "bank"*.

It was on the road, not the bank of the river, that defendant deposited the excavated overburden, a portion of which was caused to wash down the hillside by heavy rains and came to rest on the bank of the river. Moreover, although the piles of material on the bank are liable to be washed into the river, the proof is insufficient to find that navigation shall or may be impeded or obstructed thereby.

Even if it be found that defendant violated the second part of § 407, since there is no express provision in § 16 authorizing the issuance of a mandatory injunction to compel the removal of the piles on the bank, in our opinion, as stated above, the court is without statutory authority to issue it. Compare United States v. Wilson, supra.

*Should the court exercise its equitable powers to compel defendant to remove (1) the piles on the bank and (2) the bar in the river?*

We think that if the piles of material which are on the bank of the river due to the negligence of defendant (as distinguished from the excavated material intentionally deposited on the road) and the material forming the bar in the river, also caused by the negligence of the defendant, were both found to be public nuisances, a court of equity would probably possess inherent power to compel their abatement. The complaint, how-ever, did not allege specifically that either of these deposits were public nuisances or that they were causing irreparable injury to anyone. Nevertheless, the plaintiff argues that any unauthorized deposit in the river, or on the bank of the river, which shall or may obstruct navigation, is a nuisance per se and, in view of the public interest involved, must be abated under the equitable power of the court. This argument has considerable merit, but it also invites the application of equitable principles. We think that if the piles on the bank and the bar in the river are found to be nuisances in fact rather than nuisances per se, the abatement thereof in accordance with historic equitable principles is discretionary, Hecht Co. v. Bowles, supra,[6] and such discretion should be exercised sparingly, reluctantly, with caution and only in extreme cases. City of Georgetown v. Alexandria Canal Co., 12 Pet. 91, 37 U.S. 91, 9 L.Ed. 1012.

It is the conclusion of the court that the piles of material resting on the bank of the river do not constitute a public nuisance, since it was not shown that navigation was likely to be obstructed or impeded thereby, but that the bar in the river does constitute a nuisance in fact.[7]

In order to justify the abatement of the bar in the river, it must be found to cause, or likely to cause, an actual, material, substantial and serious continuing obstruction or impediment to navigation, and not merely a fanciful, trivial, technical or inconsequential one. The danger must be imminent and of pressing necessity. The mere possibility of, or fear of, future injury to navigation from the obstruction is not grounds for a mandatory injunction and equity will not interfere where the anticipated injury is doubtful or speculative; reason-

---

6. Even the provision for mandatory injunction authorized by § 12 for violation of §§ 9, 10 and 11 appears to be discretionary. Cf. State of South Carolina ex rel. Maybank v. South Carolina E. & Gas Co., D.C.E.D.S.Car.1941, 41 F.Supp. 111, 118–119.

7. State of Pennsylvania v. Wheeling & Bridge Co., 13 How. 518, 54 U.S. 518, 567, 14 L.Ed. 249; F. S. Royster Guano Co. v. Outten, 4 Cir., 1920, 266 F. 484; Gulf Atlantic Transp. Co. v. Becker County Sand & G. Co., D.C.E.D.N.C. 1954, 122 F.Supp. 13.

**226**

able probability or even reasonable certainty of irreparable injury is required. O'Malley v. Chrysler Corporation, 7 Cir., 1947, 160 F.2d 35, 36; 43 C.J.S. Injunctions § 5, p. 411; 66 C.J.S. Nuisances § 111 et seq., p. 870; 28 Am.Jur., Injunctions, § 20, p. 213; High on Injunctions, 4th ed., Vol. I, § 2, p. 3; Pomeroy's Equity Jur., 5th ed., Vol. IV, § 1359a, p. 970.

 The obstruction in the case at bar, of course, constitutes some danger to and interference with pleasure-boat traffic, which is the only type of traffic on the river above Lock 9 to the end of slack water above East Brady (see Government Exhibit 33), but it would cause no more danger to boats than the docks which are constructed on the side of the river above Lock 9. From the photographs the bar appears to be plainly visible and is connected with the land. The river authorities for over two years have not seen fit to cause a warning marker to be erected on or near it. No accident or injury has been reported during its existence. The bar does not interfere with practical navigability nor is it a material obstruction to free navigation by pleasure boats which, exclusive of the protrusion of the 50-foot bar itself from the shore, have over 900 feet of unobstructed channel in which to navigate freely. Even the operators of pleasure boats are obliged to keep a lookout and navigate carefully.[8] We find no evidence that the bar in the river is permanent or will cause irreparable injury. Hence the type of interest invaded by the alleged nuisance, in our opinion, is not such as to warrant the issuance of a mandatory injunction compelling the removal of the bar, and plaintiff should be remitted to its remedy at law.

8. Compare Corby v. Ramsdell, 2 Cir., 1931, 48 F.2d 701.

9. Although plaintiff in its complaint did not request that defendant be compelled

Even if the piles of material on the bank of the river should be found to be a nuisance, for similar reasons a mandatory injunction to compel defendant to remove them should be refused.[9]

Conclusions of Law

1. The court has jurisdiction of the parties and subject matter.

2. The defendant did not violate § 9 of the Rivers and Harbors Act of 1899 (33 U.S.C.A. § 401).

3. The defendant did not violate § 10 of said Act (Title 33 U.S.C.A. § 403).

4. The defendant violated the first part of § 13 of said Act (Title 33 U.S.C.A. § 407).

5. The defendant did not violate the second part of § 13 of said Act (Title 33 U.S.C.A. § 407).

6. The bar in the river and the piles of material on its bank are not within § 12 of the Rivers and Harbors Act of 1899 (Title 33 U.S.C.A. § 406) restricting statutory injunctive power to the removal of an unauthorized structure erected in violation of §§ 9, 10 and 11 of said Act (Title 33 U.S.C.A. §§ 401, 403 and 404).

7. The plaintiff is not entitled to a prohibitory injunction to restrain defendant from doing what he is not attempting and does not intend to do.

8. Under the facts and circumstances of this case, the plaintiff is not entitled to a mandatory injunction to compel defendant to remove the piles of material on the bank and the bar in the river, or either of them.

9. Judgment should be entered in favor of the defendant, M. H. Bigan, and the complaint dismissed on the merits.

to restore the bank of the river to its natural condition, it did so at oral argument and in its brief. See "Conclusion", page 36 of plaintiff's brief.