**UNITED STATES of America,**
**Appellant,**

v.

**M. H. BIGAN.**

**No. 12958.**

United States Court of Appeals
Third Circuit.

Argued Dec. 10, 1959.

Decided Feb. 3, 1960.

**730**

Mark R. Joelson, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen.,

Hubert I. Teitelbaum, U. S. Atty., Pittsburgh, Pa., Morton Hollander, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellant.

Vincent M. Casey, Pittsburgh, Pa. (Margiotti & Casey, Pittsburgh, Pa., on the brief), for appellee.

Before KALODNER, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

This controversy is of federal cognizance because it is a suit by the United States. 28 U.S.C. § 1345. The wrong alleged is the obstruction of a navigable stream in violation of Sections 10 and 13 of the Rivers and Harbors Act, 33 U.S.C.A. §§ 403, 407. The government also contends, though we do not find it necessary to decide, that, apart from the statute, the physical obstruction of commerce is an actionable civil wrong. The relief sought is a mandatory injunction requiring the removal of the obstruction in question, as said to be authorized by Section 12 of the Rivers and Harbors Act, 33 U.S.C.A. § 406, and the general equity power of the district court.

There is no present controversy as to the facts which were found by the district court. The defendant engaged in strip mining on the top of a wooded hill about one-fourth of a mile from the bank of the Allegheny River some sixty-eight miles above Pittsburgh. The overburden of earth removed during the stripping was deposited between the mined area and the river on an abandoned mining road, which was a hundred feet wide and ran above and parallel to the river. Later, torrential rain washed this loose material, together with brush and trees in its path, into the river creating a bar which projected some fifty feet from the shore line.

This mishap occurred at a point where the channel of the river is about nine hundred feet wide. The area is less than five miles below the head of navigation. Pleasure craft and tugboats use these upper reaches of the river. There are docks on the opposite side of the river from the bar in question.

There is no present question of prohibiting the continuation or repetition of the conduct which resulted in the creation of the bar, for the strip mining has been abandoned and its resumption is not anticipated. The sole question is whether the court can and should by mandatory injunction direct and require the defendant to remove the bar from the river.

The district court found that the bar was the result of negligence of the defendant in depositing and leaving the overburden on the mine road above and rather near the river. It also appears and is not now disputed that the bar extends into the navigable stream, somewhat narrowing the channel and thus constituting "an obstruction to navigation". However, the court concluded that it had no statutory mandate or authorization to require the removal of such an obstruction and that, all equities considered, the case did not call for the use of its general equity powers to grant the extraordinary relief of mandatory injunction. Accordingly, relief was denied. United States v. Bigan, D.C.W.D.Pa. 1959, 170 F.Supp. 219. The government has appealed from this denial of a mandatory injunction.

The relevant provisions of the Rivers and Harbors Act, 33 U.S.C.A., C. 9, are our first concern. The government contends that this is an appropriate case for the issuance of such a mandatory injunction as Section 12 of the Act, 33 U.S.C.A. § 406, authorizes for certain violations of Section 10, 33 U.S.C.A. § 403. Section 10 [1] begins with a general declaration that "the creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited". Next, there is an enumeration of types of "structures" which it "shall not be lawful to build" in navigable water unless authorized by proper public authority. Finally, there is a similar prohibition of excavating and filling which shall change the condition of navigable water.

The government does not argue that the negligent conduct of the defendant and its consequences amounted to the building of a structure, or an excavating or filling, as prohibited in Section 10. It is only the general prohibition against "the creation of any obstruction" in navigable water which is said to make defendant's conduct a statutory wrong. Even as to this general clause, there is, as the court below pointed out, a serious question whether it includes negligent conduct which has caused loose earth and rubbish to be washed into a stream and thus has created an obstruction. Cf. United States v. Bridgeport Towing Line, Inc., D.C.D.Conn.1926, 15 F.2d 240.

We need not decide this question because the relevant language of Section 12, which provides sanctions for the violation of Section 10, is different and narrower. First, Section 12 makes any violation of the provisions of Section 10 a misdemeanor. We are not now concerned with that. There follows a provision that "the removal of any structures or parts of structures erected in violation of the provisions of [Section 10] may be enforced by the injunction of any district court * * *." It is under this provi-

---

[1]. In full text, Section 10 reads:

"The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same."

sion that the district court has been asked to order the removal of the negligently created bar in this case.

■ To us it seems apparent on the face of the statute that the quoted provision of Section 12 requiring the "removal of any structures", is *in pari materia* with that part of Section 10, and only that part, which prohibits "the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures" in navigable water. It is immaterial that Section 10 also contains an introductory general prohibition of the creation of obstructions, for it is only the subsequent specific prohibition of the building of structures to which the Section 12 remedy of mandatory injunction is addressed.

■■ Accepting this analysis we do not see how the defendant's conduct in this case can reasonably be described as building or erecting a structure. To us that phrase connotes the purposeful creation of something formulated or designed, construction work in the conventional sense. Indeed, it seems a contradiction in terms to characterize a negligently caused earth slide and the resultant accumulation of material as the building or erection of a structure. Accordingly, we apply to both Section 12 and the second clause of Section 10 the restrictive interpretation which the government seems to apply only to the second clause of Section 10. It follows that, regardless of the merits of the controversy as to the meaning of the first clause of Section 10, the district court was right in ruling that statutory power to issue a

mandatory injunction as created and defined by Section 12, does not cover the circumstances of this case. United States v. Republic Steel Corp., 7 Cir., 1959, 264 F.2d 289, certiorari granted 359 U.S. 1010, 79 S.Ct. 1150, 3 L.Ed.2d 1035; United States v. Wilson, 2 Cir., 1956, 235 F.2d 251.

■ On the other hand, the court below found that Section 13 of the Act [2] makes it a wrong negligently to cause such deposit of waste and debris in a navigable stream as occurred here. But the remedies prescribed by Congress for violating Section 13 do not include the sanction of mandatory injunction, which Section 12 authorizes only for Section 10 violations and others not alleged here.

■ However, apart from any remedial statute, the district court recognized that a line of decisions of the Supreme Court seems to recognize judicial authority to grant, at the government's request, a mandatory injunction against wrongful obstruction of navigation or other direct interference with the flow of commerce. Sanitary District of Chicago v. United States, 1942, 266 U.S. 405, 45 S.Ct. 176, 69 L.Ed. 352; In re Debs, 1895, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092; State of Pennsylvania v. Wheeling & Belmont Bridge Co., 1851, 13 How. 518, 14 L.Ed. 249. Accordingly, the court carefully considered whether the equities of the situation were such that it should impose upon the defendant the burden and expense of removing the bar which had resulted from its negligence in conjunction with extraordinary rainfall. Such an approach was proper be-

2. Section 13 reads:
"It shall not be lawful to throw, discharge, or deposit, or cause, suffer, or procure to be thrown, discharged, or deposited either from or out of any ship, barge, or other floating craft of any kind, or from the shore, wharf, manufacturing establishment, or mill of any kind, any refuse matter of any kind or description whatever other than that flowing from streets and sewers and passing therefrom in a liquid state, into any navigable water of the United States, or into any tributary of any navigable water from which the same shall float or be washed into such navigable water; and it shall not be lawful to deposit, or cause, suffer, or procure to be deposited material of any kind in any place on the bank of any navigable water, or on the bank of any tributary of any navigable water, where the same shall be liable to be washed into such navigable water, either by ordinary or high tides, or by storms or floods, or otherwise, whereby navigation shall or may be impeded or obstructed; * * *" 33 U.S.C.A. § 407.

cause an "appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity". See Meredith v. City of Winter Haven, 1943, 320 U.S. 228, 235, 64 S.Ct. 7, 11, 88 L.Ed. 9. The court disclosed the result of its weighing of the equities in the following language of its opinion:

"The obstruction in the case at bar, of course, constitutes some danger to and interference with pleasure-boat traffic, which is the only type of traffic on the river above Lock 9 to the end of slack water above East Brady * * *, but it would cause no more danger to boats than the docks which are constructed on the side of the river above Lock 9. From the photographs the bar appears to be plainly visible and is connected with the land. The river authorities for over two years have not seen fit to cause a warning marker to be erected on or near it. No accident or injury has been reported during its existence. The bar does not interfere with practical navigability nor is it a material obstruction to free navigation by pleasure boats which, exclusive of the protrusion of the 50-foot bar itself from the shore, have over 900 feet of unobstructed channel in which to navigate freely. * * * We find no evidence that the bar in the river is permanent or will cause irreparable injury. Hence the type of interest invaded by the alleged nuisance, in our opinion, is not such as to warrant the issuance of a mandatory injunction compelling the removal of the bar, and plaintiff should be remitted to its remedy at law." 170 F.Supp. at page 226.

Here, it seems to us, was a factual situation in which fair-minded and reasonable judges could differ as to the need for and the equity in imposing a mandatory injunction. Such a fact as the failure of the public authorities to mark the bar in any way over a two-year period may well have had great influence in inducing a conclusion that the obstruction was in fact only a technical burden and a minimal hazard. We cannot say that the court reached an arbitrary or unreasonable conclusion in denying the extraordinary remedy of mandatory injunction.

The judgment will be affirmed.