UNITED STATES of America,
Plaintiff,

v.

FLORIDA POWER & LIGHT COM-
PANY, Defendant.

Civ. A. No. 70-328.

United States District Court,
S. D. Florida,
Miami Division.

April 16, 1970.

Walter Kiechel, Jr., Deputy Asst. Atty. Gen., Department of Justice, and Martin Green, Atty., Department of Justice, Washington, D. C., and Robert W. Rust, U. S. Atty., Miami, Fla., for plaintiff.

William C. Steel, of Scott, McCarthy, Steel, Hector & Davis, Miami, Fla., for defendant.

## ORDER ON APPLICATION FOR PRELIMINARY INJUNCTION

ATKINS, District Judge.

Lower Biscayne Bay, in the State of Florida, has been described as an area which supports a rare combination of terrestrial, marine, and amphibious life. The United States Government has initiated this lawsuit to protect this area which encompasses the Biscayne National Monument. The alleged despoiler is Florida Power & Light Company and the evil sought to be eradicated is thermal pollution. At this juncture the government seeks a preliminary injunction to stop the power company from operating its Turkey Point plant in a manner which results in the discharge of coolant water heated to a temperature allegedly harmful to the marine life of the Bay.

In a previous statement, made in open court, I delineated the legal principles under which I determined the application for a preliminary injunction

should proceed.[1] At this time, after careful consideration of the evidence presented and a view of the Turkey Point area I have decided that the application for a preliminary injunction should be denied. It is my conclusion that the government has not carried the burden of showing that the present operation of the Turkey Point plant is causing irreparable damage to lower Biscayne Bay. It is a basic principle that preliminary injunctive relief should not be granted in the absence of proof of irreparable harm and a substantial likelihood of success when the case is fully tried on the merits. District 50, United Mine Workers of America v. International Union, United Mine Workers of America, 412 F.2d 165 (D.C.Cir. 1969).

I do find that the present warm water discharge causes some damage but it is minimal and retrievable. In this regard plans are in process to reduce the temperature of the discharge water to a benign level by July of 1971. As I do not find irreparable damage, the government's request that Florida Power & Light be required to submit a plan to cool the discharge water is denied.

While I denied relief sought at this stage pertaining to two nuclear power units being installed at Turkey Point,[2] I am concerned about the large amount of heated water the units will discharge when they begin operation in 1971 and 1972. Therefore, I do plan to receive further evidence on this point at hearings to be scheduled at a later date.

1. "Gentlemen, after a careful consideration of the cases involving Section 13 of the Rivers and Harbors Act, I have determined that this proceeding should continue at this time in order that evidence be received to determine whether irreparable harm is being done to the ecology of Lower Biscayne Bay by virtue of the Florida Power & Light Company's present method of operating its Turkey Point power plant.
I feel the case law interpretation of Section 13, although arguable, endows this Court with the authority to issue injunctive relief for its violation. Justice Douglas indicated that such relief was appropriate in the Republic Steel case.
This contention that the injunctive relief is restricted to removal of structures by virtue of Section 10, is answered by reference by Douglas to the Sanitary District case. Further, Douglas did not specifically restrict his finding that Section 13 contemplated injunctive relief to the fact that navigation was obstructed in Republic.
In the case of United States v. Bigan, D.C., 170 F.Supp. 219, affirmed at 274 F.2d 729, 3 Cir., reinforces the concept of injunctive relief for violation of Section 13 as being based on the general equity power of the Federal District Court.
I would also cite footnote 12 of 16 Law Edition 2d 1256, an annotation concerning deposits of refuse in navigable waters, finding that I have the authority to grant injunctive relief for violation of Section 13 of the Rivers and Harbors Act.

I do not at present pass on the merits of the parties' position with respect to 16 U.S.Code 450(qq) and the right to relief under that statute."

2. "Gentlemen, let me say this: I treat this motion to dismiss as one applying only to this application for preliminary injunction as to paragraph three of the motion which relates to the Card Sound Canal, or canal to run to Card Sound.
And my reasoning for this decision is this: That the equity jurisdiction of the Court is sought by this application, and one of the requirements is to show irreparable damage before such preliminary injunction can be granted; and as a part of that showing, that there would be no adequate remedy at law.
The Card Sound Canal, as I shall so describe it, is being dug on land that the power company has condemned in procedures that have been admitted to have occurred. And before the canal can be used, it is clear that there must be a concurrence of interested government agencies. And by the word "use" I refer to it being utilized to discharge heated water into Biscayne Bay, or into Card Sound, as the alternative language is used. And further, that permit must be obtained from the Corps of Engineers. So, therefore, I reiterate to the extent that the application for preliminary injunction seeks to restrain the digging of the canal, the motion will be granted, and in all other respects the motion will be denied."