**UNITED STATES of America, Plaintiff,**

v.

**KENTLAND–ELKHORN COAL CORPORATION, a Kentucky corporation, Defendant.**

**Civ. No. 1582.**

United States District Court, E. D. Kentucky, Pikeville Division.

Jan. 16, 1973.

---

Eugene E. Siler, Jr., U. S. Atty., E.D. Ky., John M. Compton, Asst. U. S. Atty., E.D. Ky., Lexington, Ky., for plaintiff.

John M. Stephens, of Stephens, Combs & Page, Pikeville, Ky., for defendant.

## MEMORANDUM OPINION AND ORDER

HERMANSDORFER, District Judge.

This is the preliminary injunction aspect of this civil action which seeks preliminary and permanent injunctive relief against the defendant, Kentland-Elkhorn Coal Corporation, to cause cessation of alleged continuing discharges of blackwater into waters under Federal protection.

Jurisdiction lies under 28 U.S.C. § 1345. The applicable Federal Statutes are 33 U.S.C. §§ 407, 411, 702i and 702j. Upon a proper showing injunctive relief may be granted under the provisions of the Rivers and Harbors Act of 1899 which is codified at 33 U.S.C. § 407, United States v. Republic Steel Corporation, 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed. 2d 903 (1960).

We conclude in this instance, however, that a preliminary injunction should not issue.

At issue is the alleged pollution by the defendant of Fishtrap Lake, a Federal flood control project, constructed under the parent authority of 33 U.S.C. § 702j with the protection of the criminal sanctions, 33 U.S.C. § 411, for acts denounced by 33 U.S.C. § 407 by specifically incorporating them in 33 U.S.C. § 702i as applicable to such flood control projects. The Fishtrap Lake encompasses a drainage area of 392 square miles which defines the project involved watershed of the Levisa Fork of the Big Sandy River from the place of impoundment. The Fishtrap Project is a significant flood control project and provides low flow augmentation (maintaining streams below the impoundment by a sustained flow from the lake of 75 cubic feet per second) and public recreation. The project costs approximately Fifty-Six Million ($56,000,000.00) Dollars and was officially dedicated in 1968. The Fishtrap Dam is located in Pike County, Kentucky.

One of an undisclosed number of streams supporting the Levisa Fork and thereby Fishtrap Lake in Pike County, Kentucky is Big Creek. Above the mouth of Big Creek is a minor tributary known as Second Fork. On the waters of Second Fork of Big Creek, the defendant coal corporation operates a deep coal mine, flume, conveyor, and coal washing facility which are served by two (2) rail lines on either side of the creek and a road on the left ascending side of the creek. The waters of Second Fork commence approximately six (6) miles from the confluence of Big Creek.

The drainage area of Big Creek involves some eleven (11) square miles of drainage. Defendant's operations are situated about two (2) miles downstream from the headwaters of Second Fork.

The evidence describes an operation in which coal is brought to the mouth of the mine up on the side of a mountain, dumped into a flume and thence carried by conveyor to the coal washing plant in the valley. The land under and adjacent to the flume and conveyor is described as covered with coal fines and other mining refuse. The lands and roads in and around the coal washing plant are covered with similar material.

The coal washing plant is sustained by a two hundred and fifty thousand (250,000) gallon water supply secured by temporarily impounding the waters of Second Fork by two (2) stream control devices. The used water after the washing operation is force pumped through a pipe system to settling ponds at the rate of one hundred and forty (140) gallons per minute and the fluid so distributed consists of forty (40%) to fifty (50%) percent solids.

There is no evidence in this record as to the frequency of use of the coal washing plant.

The proof shows that as early as February 16, 1966 (and before control was assumed by the present equity owners) the defendant received a citation from an officer of the Kentucky Department of Fish and Wildlife charging the offense of discharging blackwater into Big Creek. A series of like events over the intervening years, each with notice to the corporate defendant, was established. The testimony, however, is silent as to whether State action was ever taken as to any of these citations.[1]

To the extent that the defendant has responded to the specific instances of alleged pollution mentioned in the evidence, each has been accounted for by either equipment failures, overflow of settling ponds caused by excessive rains or employee negligence. Defendant does not, in fact, deny that its operations are the source of some blackwater discharges into Second Fork, and that fact has been conclusively established in the evidence.

The plaintiff takes the fact of blackwater discharge and by it seeks to account for the destruction of aquatic life in the streams (there is some diminution of benthonic organisms below defendant's operations compared with those found above defendant's operations) and the apparently massive siltation rate being experienced at the Fishtrap Lake.

The defendant contends that the waters involved are not navigable, that any blackwater discharges do not amount to an "obstruction" within the meaning of 33 U.S.C. § 407; that the action is ill-founded because it has complied with all informational requirements in support of its application for a permit from the Huntington, West Virginia office of the U. S. Army Corps of Engineers to discharge effluents into the waters of Second Fork which permit has not been ruled on.

We are persuaded that none of the arguments of plaintiff or defendant are sufficient to direct the result in this proceeding.

■■ It is well settled Federal law that generally criminal actions cannot be enforced by the remedy of civil injunctions, In re Debs, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092 (1895), unless (1) the Statute makes injunctive relief a part of the remedy available to the United States, e.g., 33 U.S.C. § 406, or (2) in the present context, at the government's request injunctive relief is considered "against wrongful obstruction of navigation or other direct interference with the flow of commerce". United States v. Bigan, 274 F.2d 729, 732 (3rd Cir., 1960). In those cases where injunctive

---

1. Since 1950 Kentucky has had in force KRS 224.060 which denounces the pollution of Kentucky waters.

relief is specifically provided as a remedy, some authorities hold that allegations and proof of absence of adequate remedy at law and of the presence of the element of irreparable injury are not required. Bowles v. Huff, 146 F.2d 428 (9th Cir., 1944), but as in the case cited recognized the refusal of the Trial Court to enjoin the defendant under the Emergency Price Control Act of 1942. We are persuaded that the burden on the plaintiff in this action is to show irreparable injury to some degree, giving due accord to the fact that considerations to be given the public interests practically lessen the burden. Virginian Ry. v. Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937). These considerations, however, do not eliminate the requirement of showing some element of irreparable injury.

The evidence in this case which may be considered as calculated to show irreparable injury calls for the inductive conclusion that the presence of a delta or bar at the mouth of Big Creek where it joins the Levisa Fork (and within the winter flood control boundaries of the Fishtrap Lake) was the result of defendant's operations. However, the conclusion expressed in Government Exhibit 15, "Preliminary Report, Big Creek of Levisa Fork, Sedimentation Investigation", and dated July 21, 1972, notes: "The delta undoubtedly resulted from flood control operations of Fishtrap Reservoir inundating the mouth of Big Creek. The delta was approximately four (4) feet deep." Further, the evidence does not expand the nature of materials discharged by this defendant beyond "blackwater" and the deltas and other tendered evidences of massive siltation show a composition of earth material other than coal. There is no doubt that much of this material finds its way into Fishtrap Lake. The evidence tended to show siltation involving many thousands of cubic yards of earth material other than coal, but no evidence is in the record to show that this defendant caused any surface disturbance which would account for the presence of any earth material other than coal in Big Creek or Levisa Fork.

The tendered conclusion by the United States that the excessive sedimentation rate being experienced by Fishtrap Lake is endangering its economic life as a flood control project is not supported by the evidence. The evidence shows that the projected sedimentation rate of .376 acre feet per square mile of drainage area per year was an assumption based on other projects, namely Norris Lake, in Tennessee. The evidence shows that there was no engineering done to validate this borrowing of data as to its applicability to Fishtrap Lake. The conclusion of excessive sedimentation results from comparison of a range survey of actual sedimentation over a known period of time with the projected rate of sedimentation. Although this procedure may be reasonable in the construction of projects, it simply is not permissible as affording this Court the basis to determine that there is in fact such excessive sedimentation or that this defendant is responsible in any degree for such sedimentation if it is excessive.

No witness introduced by the United States was able to advise the Court as to the number of streams supporting Fishtrap, or the number of coal mine operations within its drainage basin. These facts will be material to the trial of this case upon the merits.

■ The defendant offered no evidence on the question of navigability, although challenges the existence of the fact in this case. Since the decision made in The Daniel Ball, 77 U.S. (10 Wall.) 557, 19 L.Ed. 999 (1871), the question has been one of fact. The evidence in this case is a determination by the U. S. Army Corps of Engineers that the Levisa Fork of the Big Sandy River is a navigable stream. Lack of use or changed conditions do not require a different finding. United States v. Appalachian Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940). The construc-

tion of the Fishtrap Dam does not alter the status of navigability. George v. Beavark, Inc., 402 F.2d 977, 978 (8th Cir., 1968). The conclusion of this decision is supported by the definition to be found at 33 U.S.C. § 2.10–5:

". . . A stream which otherwise conforms with the above definition would not change its navigable character because of the existence of natural or artificial obstructions such as falls, shallows, rapids, dams, or bridges."

■ We determine that the Levisa Fork at its confluence with the waters of Big Creek is a navigable stream. We further conclude that it is afforded protection under 33 U.S.C. § 702j as a flood control project influencing the Mississippi River and its major tributaries and directly affects inter-state commerce because of that relationship.

■ Argument is made that the blackwater discharges of the defendant do not constitute "obstructions" within the meaning of 33 U.S.C. § 407. The authority of United States v. Republic Steel Corporation, 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960), requires that we reject this argument out of hand since that decision held that "obstructions" were not limited to structures but included discharges into navigable waters which had the effect of reducing channel depth, thereby creating an obstruction. It is not necessary, under the cases, that the discharge of solid particulate matter be permitted to go unchallenged until a major obstruction is created. Any obstruction "which tends to destroy the navigable capacity of one of the navigable waters of the United States, is within the prohibition". United States v. Rio Grande Irrigation Co., 174 U.S. 690, 708, 19 S.Ct. 770, 777, 43 L.Ed. 1136 (1899).

■ We consider and reject the argument that "blackwater" does not constitute "refuse" within the meaning of the Act. United States v. Standard Oil Co., 384 U.S. 224, 230, 86 S.Ct. 1427, 16 L.

Ed.2d 492 (1966); United States v. Pennsylvania Industrial Chemical Corp., 461 F.2d 468, 471 (3rd Cir., 1972).

■ The defendant suggests that this action should not lie pending a determination of its application for a permit from the U. S. Army Corps of Engineers to discharge certain effluents into the waters of Second Fork. We cannot agree. The evidence shows that some twenty (20) applications are on file with the Huntington office of the Corps of Engineers. None of these have been granted, although, like defendants, some have been pending for several years. The pendency of an application cannot be asserted as a defense in this action for the reason, among others, that the Federal Water Pollution Control Act, 33 U.S.C. § 1171(b) at Section 21(b), prohibits the granting of such discharge permit until State water pollution standards have been met. Second Fork of Big Creek constitutes State waters for pollution control purposes. The Kentucky Water Pollution Control Commission has been established pursuant to KRS 224.010 and has promulgated regulation WP–4–1 requiring that Kentucky waters be free from nuisance conditions created by color and from material toxic to aquatic life. The exhibits of water samples demonstrate that defendant has not met the Kentucky requirements as to clean water which are essential to the issuance of the permit sought, and the evidence shows some diminution of aquatic life although the reasons for the existence of the fact are not explained.

■ Although the motion for preliminary injunction is denied, the defendant shall permit, during the pendency of this action, representatives of the United States, upon notice and during normal working hours, to come upon the premises of the defendant's operation on Second Fork of Big Creek in Pike County, Kentucky for the purpose of making such reasonable examination of the waters of Second Fork of Big Creek and making visual examinations of amount

of coal materials subject to being carried into the waters of Big Creek by normally anticipable rain fall and run off. A representative of defendant may accompany any persons authorized by this order to visit the subject coal operation.

It is so ordered.