### THE MANHATTAN.

### THE BESSEMER.

### UNITED STATES v. ATLANTIC REFINING CO. et al.

### No. 5970.

Circuit Court of Appeals, Third Circuit.

June 30, 1936.

Rehearing Denied Sept. 22, 1936.

1.

See, also, The Manhattan (D.C.) 3 F. Supp. 75; The Bessemer (C.C.A.) 63 F. (2d) 995.

J. Frank Staley, of Washington, D. C., and Charles D. McAvoy, of Philadelphia, Pa., for appellant.

Lewis, Wolff & Gourlay, of Philadelphia, Pa. (Otto Wolff, Jr., of Philadelphia, Pa., of counsel), for appellees.

Before BUFFINGTON, Circuit Judge, and DICKINSON and FORMAN, District Judges.

DICKINSON, District Judge.

This litigation has reached its final stage. The sole question to be now answered is that of the sum of money which the libelant should recover in damages. The damages awarded were to compensate the owner of a vessel injured or destroyed. The ideal of such compensation is to restore the vessel as she was. That the owner should recover the cost of restoration is clear enough, but it is difficult to accept the thought that the money loss could exceed the money value of what was lost. Some plausibility is given to such a claim by viewing the obligation as one to restore. Such it is, but it is not to supply a new vessel in place of an old one, nor one worth $1,000,000 in place of one worth $300,000. Whatever difficulty the problem presents is not in formulating the theory of compensation, but in translating vessel value into terms of money. As-

suming a total loss, what was the vessel worth at the time she was sunk? This suggests the word "value" than which there is no word in our language more often abused or is used in more different senses. In damage cases, and indeed all cases of property, "value" means commercial or exchangeable value. This takes us into the province of trade. For how much money would the property have sold? Ordinarily we have a very practical test of this. It is to apply the test of market value. Why is this accepted as a test? It is an assumption. It is assumed that what people generally are willing to give and accept for anything is its exchangeable value. There are things, however, of real value which do not have a market price because they are not dealt in, just as at times things have no market value because there is no market. To what standard measure of value shall resort then be had? The law is simple enough. It directs us to find some other measure. In the attempt to follow this direction, help or confusion, as the case may be, is afforded or created by sometimes ingenious and sometimes fanciful theories of value. Such is the instant case.

The Manhattan was a total loss in the money value sense. She had no market value. How is the money loss to be determined? The Proteus Case (Standard Oil Co. v. Southern Pacific Co.), 268 U.S. 146, 45 S.Ct. 465, 69 L.Ed. 890, supplies us with the only, but an all sufficient, chart in directing our course to the desired port. The commissioner and the trial court have steered by this chart and have arrived. As the commissioner, in his very satisfactory discussion of the question, has shrewdly remarked, he is required by the teachings of the Proteus Case to constitute himself a jury. As such he is called upon to assess damages for the loss of the Manhattan precisely as a jury would render a verdict in a personal injury case.

Every profession develops experts, but the professional view, and this includes both the Engineering and the Legal profession will become wildly fantastic unless subjected to the check of the common judgment, voiced in the phrase common sense.

The jury system has many merits, one of the chief of which is that it deals with results, not the reasons for reaching results. If we were dealing here with the verdict of a jury in a damage case, no

serious difficulty would be encountered. Whatever difficulty there is arises, not out of the award made, but the reasons given for reaching it.

The experienced and clear-headed proctor for the libelant insists that the test of the loss to be here applied is the bid which would be submitted for the construction of a vessel such as the one sunk. He has submitted one such bid, and as this is the only bid, he demands that it be accepted. The test of the common judgment does not support him in this. Common experience has taught us that bids, even when competitive, are not always safe guides to fair values. This is voiced in the phrase of the reservation of the right to reject any and all bids. The commissioner and the court exercised this right. The test of damage applied was the value of the vessel. This, it is true, was to exchange one difficult problem for another. The libelant complains that in determining this value the witnesses, in considering the element of depreciation, slavishly followed what is known to this record as the "I. C. C." rule or method. We do not think so. They had it in mind, and it doubtless had weight with them, as we think it should. The analogy is that of a permanent personal injury case in which the Carlisle or the American Mortality Tables are considered. The commissioner and the court in reaching the final award did what every jury in a damage case is properly instructed to do, award such sum as reflects the sane, sober judgment of the jury of what the damage suffered is.

This disposes of all the assignments of error, except possibly two. One relates to the allowance of what is discussed as interest, and the other to the cost of removing the sunken vessel as an obstruction to navigation.

There is no complaint of what is called the "interest allowance," except as to the date from which calculated. The Pennsylvania theory is, we think, the true one. Until an award is made of the damages, interest qua interest is not allowed, but delay in making compensation is an element in determining the damages. Damage is sustained as of a certain date. What the damage is may not be and is not affected by the time when estimated, but the damage is as found, and an award made on one date is not the equivalent of an award made at an earlier date. The delay thus enters into the late award as an element of loss, and the damage awarded is for a sum which is the equivalent of what would have been a smaller sum if earlier awarded. The difference between loss and interest thus becomes little more than a difference in words, but it none the less exists in theory.

A complaint that too little interest has been figured into the award is nothing more than a complaint that the award was too small.

The final complaint of the disallowance of the cost of removing the obstruction to navigation is well answered in the opinion of the learned court. We see no need to add to this.

The assignments of error are overruled, and the decree of the District Court affirmed, at the cost of the appellant.