## CROWN CENTRAL PETROLEUM CORPORATION v. CONSOLIDATED OIL CO. OF HOUSTON, TEX.*

### No. 7802.

Circuit Court of Appeals, Fifth Circuit.

Aug. 15, 1936.

Rehearing Denied Sept. 18, 1936.

*Writ of certiorari denied 57 S. Ct. 193, 81 L. Ed. —.

Thomas Fletcher, of Houston, Tex., and Karl F. Steinmann and H. Rank Bickel, Jr., both of Baltimore, Md., for appellant.

Clarence Kendall, Wayne C. Depew, and Sam'l B. Dabney, all of Houston, Tex., for appellee.

Before FOSTER, HUTCHESON, and WALKER, Circuit Judges.

FOSTER, Circuit Judge.

Appellee, Consolidated Oil Company of Houston, Tex., a Texas corporation, brought this suit against appellant, Crown Central Petroleum Corporation, a Delaware corporation, to recover commissions alleged to be due under a contract of agency. The parties will be hereafter referred to respectively as plaintiff and defendant. The case was tried to a jury, and resulted in a verdict in favor of plaintiff in the sum of $82,851.74, on which judgment was entered, subject to a credit of $58,292.96, judgment entered on a counterclaim.

The only assignments of error pressed run to the denial of a motion for an instructed verdict for defendant. As only a question of fact is presented, we will not attempt to review the many authorities cited by defendant, as they merely announce well-known principles of law.

The following undisputed facts appear from the record: Plaintiff had an established business for the sale of gasoline in Houston, Tex. It owned and operated a bulk plant on McKinney avenue and 87 filling stations, most of them in Houston, but 3 or 4 outside of the city limits in Harris county. Defendant owned and operated a plant for the manufacture of gasoline and other oil products at Pasadena, on the ship channel near Houston. Its headquarters were in Baltimore, Md.

In February, 1931, plaintiff and defendant entered into two concurrent contracts, in effect one contract, by which plaintiff leased to defendants all its filling stations and other facilities, and plaintiff was appointed sole agent of defendant for the sale of its gasoline and other products in Harris county on a commission basis. The rent and commissions were fixed by the amount of gasoline sold and aggregated six and one-half cents per gallon, regardless of quality or price at which sold. Defendant retained control of prices of selling, but was obligated to meet competition from major oil companies. At that time defendant manufactured only two grades of gasoline, a superior grade and regular gasoline. This

was also true as to all other oil companies selling gasoline in Houston. The contract became effective May 1, 1931, and was terminated under a provision of the agreement by defendant on September 30, 1933.

In August, 1931, competition developed in Houston from what was known as bootleg gasoline, sold from two to three cents a gallon under regular prices. Plaintiff's trade was materially and adversely affected by this, and, after unsuccessfully endeavoring to have defendant furnish it an inferior grade of gasoline to meet this competition, plaintiff adopted the expedient of coloring some of the regular gasoline red and selling it at two cents a gallon less than the same product not colored, in order to hold its trade. This brought forth a vigorous protest from defendant. After considerable negotiations between the parties, at a meeting held in Houston, at the office of plaintiff, in the early part of August, 1931, probably the 7th, it was agreed that defendant would thereafter color some of its regular gasoline red for sale by plaintiff, and plaintiff agreed to pay for the dye and to absorb any loss defendant would suffer.

About the 1st of October, 1931, the competition of bootleg gasoline became so keen that all the major oil companies operating in Houston began to put out an inferior grade of gasoline, under different names, to meet it. On October 5, 1931, plaintiff wrote a letter signed by its president, J. B. Russ, to H. A. Rosenberg, who was then either president or operating vice president of defendant, addressing it to the office of defendant at Baltimore, Md., which advised that on Saturday, October 5, 1931, the Humble Company, Gulf Refining Company, and Sinclair Refining Company had started the sale of third grade gasoline, and that he understood the Texas Company and the Magnolia would meet this the latter part of the week. The letter concluded with this paragraph: "Under our contract we naturally expect our regular rentals and commissions on red gasoline from that date and for you to pay for the dye used in making this product as this has become major competition operating here and over the state."

Defendant had paid commissions on red gasoline at four and one-half cents, which plaintiff had accepted. After writing the above set out letter, plaintiff charged defendant with commissions at the rate of six and one-half cents per gallon on red gasoline. The only dispute is whether plain-

tiff should recover commissions at the rate of six and one-half cents per gallon on red gasoline or four and one-half cents as contended by defendant. It was admitted that, if plaintiff is entitled to recover at the six and one-half cent rate, the judgment is correct in amount. Plaintiff also admitted that the amount awarded on the counterclaim is correct.

As to what was said and done at the meeting of November 7, 1931, Rosenberg, president of defendant, testified that it did not manufacture a third grade gasoline while the contract was in force and all the red gasoline delivered to plaintiff was regular gasoline colored red; that he advised Russ that defendant would continue to furnish plaintiff regular grade of motor gasoline and the rent on red gasoline would be one-half cent at the bulk plant, two cents commission on sales at the bulk plant, one cent rent at the service stations, and one cent commission at the service stations, making a total of four and one-half cents commission; and that was the very best they would do; that Russ said, "all right"; and that was the last of that meeting. He was corroborated as to this by Lane, who was assistant secretary and treasurer of defendant, located at Houston and actively engaged in the business of defendant. Russ, president of plaintiff, testified that the first time the contention of defendant as to the existence of an oral agreement to take four and one-half cents commission on red gasoline was ever discussed was in November, 1932, at a meeting in the Rice Hotel; that he had never agreed to accept four and one-half cents commission on red gasoline; and that he did not say to Rosenberg that it was "all right" when told it was the best defendant could do. In this he was corroborated by Czigan, who was secretary and treasurer of plaintiff, and present at the meeting.

██ It is contended by defendant that the contract contemplated the furnishing of only the two grades of gasoline that defendant was manufacturing at that time. That may be conceded. However, it is clear that under the contract, which is unambiguous, while defendant had the right to fix the prices at which its gasoline was to be sold by plaintiff, it was obligated to meet major competition. In doing this they might have incurred a loss in selling their regular products, but that would not have deprived plaintiff of any part of its commission. We find nothing in the contract that would have justified the District Court in taking the case from the jury. Of course, it is elementary that a written contract may be amended by subsequent oral agreement between the parties, but whether that was done, on the conflicting evidence, presented a question for the jury.

The record presents no reversible error.

Affirmed.

Judge WALKER concurred in the disposition of this case, but died before the opinion was handed down.