**UNITED STATES of America,**
**Appellant,**

v.

**Charles ZUBIK.**

**No. 13516.**

United States Court of Appeals
Third Circuit.

Argued June 5, 1961.

Decided Sept. 27, 1961.

Mark R. Joelson, Washington, D. C. (William H. Orrick, Jr., Asst. Atty. Gen., Hubert I. Teitelbaum, U. S. Atty., Pittsburgh, Pa., Alan S. Rosenthal, Dept. of Justice, Washington, D. C., on the brief), for appellant.

Donald L. Very, Pittsburgh, Pa. (Campbell, Casteel & Thomas, Pittsburgh, Pa., on the brief), for appellee.

Before MARIS, KALODNER and FORMAN, Circuit Judges.

KALODNER, Circuit Judge.

Is the United States entitled to recover the cost of removing a wrecked vessel obstructing a navigable river from its owner who negligently sank the vessel and failed to remove it, after demand, in violation of the Rivers and Harbors Act of 1899, as amended ("Act").[1]

That is the primary question, of first impression, presented by this appeal by reason of the negative answer given to it by the District Court for the Western District of Pennsylvania.

The District Court granted the motion of the defendant Charles Zubik to dismiss the complaint of the United States seeking recovery of the cost of removing his two sunken vessels from the Allegheny River, and subsequently denied the Government's motion to file an amended complaint. In so doing the District Court held that the Government had failed to state a claim upon which relief could be granted.[2]

In order to test the legal validity of the complaint, as amended, the allegations of fact therein are taken as admitted and may be summarized as follows:

On November 10, 1951, Zubik owned two towboats, the SS Joe Carter and the SS A.B. Sheetz, which he negligently sank in the Allegheny River, Emsworth Pool ("River") near Pittsburgh, Pennsylvania, in such manner as to obstruct navigation. Zubik failed to remove immediately the sunken vessels, as required by the Act. In March, 1952, Zubik dismantled portions of the SS A.B. Sheetz and deposited materials from it on the bank of the Allegheny River, in such manner as made them liable to be washed off into the River in violation of the Act.

In September 1956 (five years after the sinkings), the United States, after Zubik had failed to comply with its demand to do so, removed the wreckage of the sunken SS Joe Carter and SS A.B. Sheetz from the River and the portions of the latter lying on the River bank at a cost of $3,273.83. It then brought an action against Zubik, alleging that the wrecks and wreckage were valueless and the costs of removal went to the "unjust enrichment of the defendant in that amount."

The sum of the Government's contention on this appeal is that while the Act makes no specific provision for the Government's recovery of the cost of removing negligently sunken vessels which obstruct navigation, it nevertheless "contemplates that the persons who have thus unlawfully obstructed navigation shall bear the expenses of alleviating the consequences of their unlawful conduct, rather than the public itself", and that "the fact that a remedy by way of damages is not explicitly accorded to the United States by the relevant provisions of the Act is not a proper basis for deeming such relief precluded."

The Government relies heavily on United States v. Republic Steel Corp., 1960, 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 as "teaching" that the courts must broadly construe the Act "and formulate and accord remedies appropriate to the effective enforcement of the Act" and that "such remedies are to be fashioned even though they may rest on inferences".

In reply Zubik urges that the Republic Steel case "does not stand for the proposition * * * that the * * * Act should be thrown open to judicially legislated remedies which do not appear in the Act itself", and that it should, in substance, be limited to its express holding that injunctive relief is available to the Government to compel one creating an obstruction to a navigable stream to remove it. Zubik further contends that the Gov-

[1.] 30 Stat. 1121 et seq.; 33 U.S.C.A. § 401 et seq.

[2.] The "Memorandum" of the District Court granting the motion to dismiss the complaint and its subsequent "Order Denying Leave to File Amended Complaint" are not reported.

ernment's rights, when it removes a sunken vessel, are *in rem* and not *in personam*.

It must be noted at this point that the District Court considered Republic Steel and subscribed to Zubik's contention with respect to its impact on the instant situation.

We proceed now to consideration of the issue presented for our determination.

As was said in Republic Steel, 362 U. S. at pages 485–86, 80 S.Ct. at page 887:

"The history of federal control over obstructions to the navigable capacity of our rivers and harbors goes back to Willamette Iron Bridge Co. v. Hatch, 125 U.S. 1, 8, 8 S.Ct. 811, 815, 31 L.Ed. 629 [1888], where the Court held 'there is no common law of the United States' which prohibits 'obstructions' in our navigable rivers. Congress acted promptly, forbidding by § 10 of the Rivers and Harbors Act of 1890, 26 Stat. 426, 454, 'the creation of any obstruction, not affirmatively authorized by law, to the navigable capacity' of any waters of the United States. The 1899 Act followed a report to Congress by the Secretary of War, which at the direction of Congress, 29 Stat. 234, contained a compilation and revision of existing laws relating to navigable waters. The 1899 Act was said to contain 'no essential changes in the existing law.'"

In view of the foregoing it is essential to consider these provisions of the Act which are relevant here:

(1) Section 10, 33 U.S.C.A. § 403 provides "that the creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is hereby prohibited," and makes it unlawful "to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of * * * the channel of any navigable water" without the authorization of the Secretary of War.

(2) Section 12, 33 U.S.C.A. § 406, provides that violation of § 10 of the Act constitutes a misdemeanor, and that "the removal of any structures or parts of structures erected in violation" of § 10 "may be enforced by the injunction."

(3) Section 13, 33 U.S.C.A. § 407, makes it unlawful "to deposit * * material of any kind in any place on the bank of any navigable water * * * where the same shall be liable to be washed into such navigable water * * *"

(4) Section 15, 33 U.S.C.A. § 409 makes it unlawful "to voluntarily or carelessly sink, or permit or cause to be sunk, vessels or other craft in navigable channels", and provides that "whenever a vessel, raft, or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise * * * it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States as hereinafter provided for."

(5) Section 16, 33 U.S.C.A. § 411, makes violation of § 13 and § 15 punishable by fine or imprisonment, or both, and further provides 33 U.S.C.A. § 412 that "any boat, vessel, scow, raft, or other craft used or employed in violating any of the provisions of sections thirteen * * * and fifteen of this Act shall be liable for the pecuniary penalties specified in this section * * *."

(6) Section 19, 33 U.S.C.A. § 414 provides that whenever a sunken vessel has obstructed navigation for a period longer than thirty days "the sunken vessel * * * shall be subject to be broken up, removed, sold, or otherwise disposed of by the Secretary of War at his discretion, without liability for any damage to the owners of the same * * *" and, "that any money received from the sale of * * * such wreck, or from

any contractor for the removal of wrecks \* \* \* shall be covered into the Treasury of the United States."

As earlier indicated the Government concedes that a remedy by way of damages is not explicitly accorded to it by the provisions of the Act above set forth. In this connection it must be noted that in its complaint, as amended, the Government alleged (1) Zubik had violated 33 U.S.C.A. §§ 403 and 409 (Sections 10 and 15 of the Act) in negligently sinking his two towboats in the River in such manner as to obstruct navigation and in failing to remove the wreckage immediately; (2) Zubik violated 33 U.S.C.A. § 407 (Section 13 of the Act) in dismantling portions of one of the towboats and depositing same on the River bank in such manner that they were "liable to be washed" into the River, and (3) the Government had removed the two towboats from the River and the portions of the towboat on the River bank "under the statutory powers vested in plaintiff" by 33 U.S.C.A. §§ 409 and 414 (Sections 15 and 19 of the Act).

■ Analysis of the provisions of the Act affords no support to the Government's theory that they "contemplate" the accord to the United States of the right to recover from the owner of a negligently sunken vessel which obstructs navigation the cost of removing it in instances where the United States has, as here, chosen to remove the wrecked vessels under the provisions of Sections 15 and 19 of the Act.

Section 15 of the Act in providing that failure to effect immediate removal of a negligently sunken vessel "shall be considered as an abandonment of such craft, and subject the same to removal by the United States as hereinafter provided", paves the way for forfeiture of the abandoned craft to the United States at the latter's option under the terms of Section 19 of the Act which provides that a sunken vessel which has obstructed navigation for more than thirty days "shall be subject to be broken up, removed, sold, or otherwise disposed of by the Secretary of War at his discretion, without liability for any damage to the owners of the same." Section 19 contains the further provision "that any money received from the sale of \* \* \* such wreck \* \* \* shall be covered into the Treasury of the United States."

Here the Government chose to invoke the forfeiture provisions of Sections 15 and 19 of the Act in proceeding to remove the wreckage from the River and its banks. The end result was the forfeiture to the Government of the wreckage and the Government having elected to effect such a forfeiture must abide by its election, and accordingly cannot recover the expenses attending it in the absence of express or even implied provision in the Act for the recovery of forfeiture expenses.

■ The Government's novel concept that Section 15 and the statutory scheme of the Act as a whole "contemplates" the allowance of forfeiture expenses not only lacks support by reason of the absence of express or implied provisions in the Act but is rather effectively contravened by the provisions of the Act itself.

For example, Section 12 of the Act (33 U.S.C.A. § 406) which makes violation of Section 10 (33 U.S.C.A. § 403) a misdemeanor punishable by fine or imprisonment, or both, and provides for resort to injunctive process in any district court to compel removal of obstructions in navigable waters, confines its reach to the owner of a wrecked vessel only to the extent of his punishment, and/or subjection to the injunctive process.

Again, Section 16 of the Act (33 U.S.C.A. §§ 411, 412) which makes violation of Sections 13 (33 U.S.C.A. § 407) [3] and 15 (33 U.S.C.A. § 409) a misdemeanor punishable by fine or imprisonment, or both, also provides that the sunken vessel "shall be liable" for the fine, if any, imposed on the offending owner.

---

3. Relating to deposits of materials on river banks where they are "liable to be washed into such navigable water".

Thus, even in the sections imposing criminal penalties for violations of the Act there is not the slightest indication that Congress intended to impose the imposition of removal costs of a sunken vessel on the violating owner. On the other hand, the provisions in Section 16 (33 U.S.C.A. § 412) that any fine imposed could be levied against the vessel indicates the Congressional intent to the contrary.

The sum total of the statutory scheme, excepting its criminal penalty provisions, evidences that the forfeiture right accorded to the Government to remove wrecks obstructing navigable waters is in the nature of an *in rem* right against the removed vessel and not an *in personam* right against the vessel's owner.

This conclusion is buttressed by another provision in the Act not called into play in the instant situation. Section 20, 33 U.S.C.A. § 415, which empowers the Secretary of War in emergencies, to remove without notice, any sunken vessel obstructing navigation, provides that "the expense of removing any such obstruction * * * shall be a charge against such craft and cargo; and if the owners thereof fail or refuse to reimburse the United States for such expense within thirty days after notification, then the officer or agent [of the Secretary of War] aforesaid may sell the craft or cargo, or any part thereof * * * and the proceeds of such sale shall be covered into the Treasury of the United States."

It is pertinent to note that in The Manhattan, D.C.E.D.Pa.1935, 10 F.Supp. 45, affirmed 3 Cir., 1936, 85 F.2d 427, certiorari denied sub nom. U. S. v. The Bessemer, 300 U.S. 654, 57 S.Ct. 432, 81 L.Ed. 864, Judge Kirkpatrick viewed the forfeiture provisions of the Act as creating a right *in rem* against the vessel involved. In that case a Government-owned dredge, The Manhattan, was sunk in the Delaware River in a collision with a tanker, The Bessemer, and in earlier litigation The Manhattan was found to be without

fault and The Bessemer negligent.[4] The Government removed The Manhattan from the river and then sought to add, as an item of damages, in its action against The Bessemer arising out of the collision, its cost of removal, asserting that right under the provisions of the Act. In holding that the Act did not create a right of recovery to the Government of its cost in removing The Manhattan from the river Judge Kirkpatrick said 10 F. Supp. at 50:

"'* * * whatever cost falls upon the government in removing any vessel occurs by reason of its general powers and functions and not by reason of its ownership of the wreck. The burden upon the government is exactly the same whether the vessel sunk is government owned or privately owned, *or whether it was sunk by wrongful act or by pure accident.*

"So far as I know the right of recoupment against a tort-feasor who causes a sinking has never been asserted by the government in case the wreck was privately owned, and *I can find nothing in the statute which creates such a right either in the case of privately owned vessels or of those which are the property of the government. In fact, the rights in rem which are conferred would seem to negative that intent. At any rate the statute is silent upon the subject.*" (Emphasis supplied.)

On appeal this Court stated, 85 F.2d 429:

"The final complaint of the disallowance of the cost of removing the obstruction to navigation is well answered in the opinion of the learned court. We see no need to add to this."

The Government urges here that in The Manhattan the owner of the vessel (the Government) was without fault in the sinking while in the instant case Zubik was at fault and for that reason The Manhattan is inapposite here, and our

---

4. The Manhattan, D.C.E.D.Pa.1932, 3 F.Supp. 75.

affirmance in 85 F.2d 427 is for that reason not dispositive in the instant case.

We agree with the Government in this respect but in doing so must point out that Section 15 of the Act provides that the owner of a vessel "sunk in a navigable channel, *accidentally or otherwise*" must proceed to immediate removal or be held to have abandoned the craft so as to make it subject to removal by the Government.

At this juncture it should be noted that Zubik has cited in support of his position our earlier holding in the unrelated case of Zubik v. United States, 3 Cir., 1951, 190 F.2d 278. In that case we held that there was a forfeiture to the Government of a barge owned by Zubik which had accidentally sunk in the Allegheny River, obstructing navigation, and had been removed by the Government more than three months later after Zubik had failed to comply with a notice to effect removal. Zubik filed a libel seeking recovery of the barge upon payment to the Government of its cost of removal. In doing so he urged that the value of the barge exceeded the cost of removal. The libel was dismissed by the trial court and we affirmed.

In doing so we made the following statement at page 281, 190 F.2d which Zubik contends is dispositive here:

> "It is immaterial that as a matter of hindsight it appears that the government stands to gain rather than lose by the deal. *If the costs of removal exceeded the value of the barge the owner would not be liable for the difference.*" (Emphasis supplied.)

We need only say with respect to the latter statement that under the facts of the case it was obiter dicta and accordingly not dispositive here.

Several other cases cited by the Government and Zubik are inapposite to the situation here and do not merit discussion.

United States v. Republic Steel Corp., supra, has no impact upon the issue in the instant case. The questions there presented and decided are entirely unrelated to the problem here involved.

There remains only this to be said.

The Government's contention that the Rivers and Harbors Act should be given a construction by the courts to accord remedies not therein "explicitly accorded" because the legislation "contemplates" the asserted remedies is plainly an effort to achieve judicial legislation. The teaching of the Supreme Court to the contrary since the beginning of our constitutional government is so manifest that citation is not required.

 It is the province of Congress and not that of the courts to legislate and where Congress has legislated in a particular field explicitly and with definiteness as it has in the Rivers and Harbors Act for the courts to expand the periphery of the legislative scheme would be judicial trespass.

For the reasons stated the Orders of the District Court will be affirmed.