**UNITED STATES of America**

v.

**OHIO BARGE LINES, INC., in personam and M/V Steel Forwarder, her engines, tackle, appurtenances, etc., in rem.**

**Civ. A. No. 75–783.**

United States District Court, W. D. Pennsylvania.

June 9, 1977.

---

**37.** Conn. Gen. Stat. § 42a–1–102(2)(b).

**38.** *See* note 24 *supra* and accompanying text.

Don Kronenberger, Admiralty & Shipping Sect. U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Wayne Emery, Pittsburgh, Pa., for defendants.

## OPINION

ROSENBERG, District Judge.

This matter is before me on motions filed by the defendants, Ohio Barge Lines, Inc. (Ohio Barge) and the M/V Steel Forwarder (Forwarder), a river going vessel owned by Ohio Barge, to dismiss the complaint filed against them by the United States pursuant to Rule 12(b)(6), Federal Rule of Civil Procedure. The defendant Ohio Barge alleges that the plaintiff's claim asserting a violation of § 10 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 403 fails to state a claim against it, while the defendant Forwarder alleges that the plaintiff's claim of a violation of § 10 and § 15 of the Act, 33 U.S.C. § 403 and § 409 fails to state a claim against it. Section 403 states as follows:

"Obstruction of navigable waters generally; wharves; piers, etc.; excavations and filling in

The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of a wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor,

canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same."

Section 409 reads as follows:

"Obstruction of navigable waters by vessels; floating timber; marking and removal of sunken vessels

It shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft; or to voluntarily or carelessly sink or permit or cause to be sunk, vessels or other craft in navigable channels; or to float loose timber and logs, or to float what is known as 'sack rafts of timber and logs' in streams or channels actually navigated by steamboats in such manner as to obstruct, impede, or endanger navigation. And whenever a vessel, raft, or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it with a buoy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said owner so to do shall be unlawful; and it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States as provided for in sections 411 to 416, 418 and 502 of this title."

For the purpose of making a determination on a motion to dismiss and reviewing the facts, the complaint is reviewed in the light most favorable to the plaintiff and its allegations are taken as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Curtis v. Everette,* 489 F.2d 516, C.A. 3, 1973, cert. den. 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1973).

The Government alleges that on or about June 27, 1972, the Forwarder was pushing seventeen barges upstream nearing Mile 846.0 on the Ohio River at the Government's Uniontown Lock and Dam site when it "willfully, voluntarily, carelessly and/or negligently caused or permitted to sink three barges in its tow." Plaintiff's complaint, paragraph 7. Due to this sinking the Government contends that an obstruction to navigation was caused and in order to ensure the safety and welfare of river traffic, the Corps of Engineers determined that a helper boat would be necessary to escort traffic at the Uniontown Lock as long as the obstruction remained and the salvaging operation continued. After Ohio Barge declined to provide a helper boat, the Corps of Engineers contracted for the services of the T/B Jefferey Lynn from July 24, 1972 through August 20, 1972 for $15,680.00.

The Government has filed this action pursuant to the above incident claiming that the defendants caused an obstruction in navigation in violation of 33 U.S.C. § 403 and § 409 and were therefore under a duty to provide or pay for services rendered by the helper boat, T/B Jefferey Lynn, as well as removing the obstruction. The Government also alleges that the obstruction was a nuisance and an obstruction to navigation in violation of the general maritime laws.

The defendant Ohio Barge moves only to dismiss the Government's statutory claims on the basis that the Government has no cause of action against it pursuant to § 10 of the Act, 33 U.S.C. § 403, because the law of the Third Circuit is that unintentional sinking of a barge creates no in personam rights under § 10 of the Act and a negligently sunken barge is no obstruction.

An interpretation of the first clause of § 10 is the crux of the problem with a special concern for the word "obstruction". Although there is a recognized conflict among the Circuits as to whether or not a sunken vessel qualifies as an "obstruction" in § 10, in *Wyandotte Transportation Co. v. United States,* 389 U.S. 191, 196, n. 5, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), a broad

interpretation must be given to § 10 and in turn to the purpose or scope of the Act. *United States v. Republic,* 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960).

The defendant Ohio Barge misplaces reliance on three cases: *United States v. Zubik,* 295 F.2d 53, C.A. 3, 1961; *The Manhatten,* 85 F.2d 427, C.A. 3, 1936 and *United States v. Bigan,* 170 F.Supp. 219 (D.C.Pa. 1959), aff'd 274 F.2d 729, C.A. 3, 1960, which it claims stand for the proposition that an unintentional sinking of a barge creates no in personam rights under § 10 and that a sunken barge is no obstruction. A careful reading discloses that *The Manhatten, supra,* never even deals with § 10 of the Act in question, and *United States v. Zubik, supra,* which applies the theory that removal expenses for sunken vessels are not authorized by the Act, was reversed by *Wyandotte, supra,* which held:

". . . Petitioners' interpretation of the Rivers and Harbors Act of 1899 would ascribe to Congress an intent at variance with the purpose of that statute. Petitioners' proposal is, moreover, in disharmony with our own prior construction of the Act, with our decisions on analogous issues of statutory construction, and with a major maritime statute of the United States. If there were no other reasonable interpretation of the statute, or if petitioners could adduce some persuasive indication that their interpretation accords with the congressional intent, we might be more disposed to accept that interpretation. But our reading of the Act does not lead us to the conclusion that Congress must have intended the statutory remedies and procedures to be exclusive of all others. There is no indication anywhere else—in the legislative history of the Act, in the predecessor statutes, or in nonstatutory law—that Congress might have intended that a party who negligently sinks a vessel should be shielded from personal responsibility. We therefore hold that the remedies and procedures specified by the Act for enforcement of § 15 were not intended to be exclusive. Applying the principles of our decision in Republic Steel, we conclude that other remedies, including those here sought, are available to the Government." (389 U.S. at pages 200–201, 88 S.Ct. at page 385.)

However, the defendant Ohio Barge's main thrust is placed on the court's interpretation of the Act in *United States v. Bigan, supra.* There the Government was seeking a mandatory injunctive order under the second sentence of § 12, 33 U.S.C. § 406,[1] for an alleged violation in § 10 to remove dirt and stones negligently discharged into the river. The Court held that the second sentence of § 12 was in *pari materia* with the phrase in § 10 which prohibited the building of any wharf, pier, etc., and therefore a sand barge, negligently created in that it was not an intentional fill, is natural and not a "structure" and no injunction should lie under § 12. It based its determination on *United States v. Republic Steel Corp.,* 264 F.2d 289, C.A. 7, 1959, even knowing certiorari was granted in 359 U.S. 1010, 79 S.Ct. 1150, 3 L.Ed.2d 1035, 1959.

In *United States v. Republic Steel Corp., supra,* the Supreme Court reversed the above reasoning by holding:

"There is an argument that § 10 of the 1890 Act, 26 Stat. 454, which was the predecessor of the section with which we are now concerned, used the words 'any obstruction' in the narrow sense, embrac-

---

1. § 406. Penalty for wrongful construction of bridges, piers etc.; removal of structures

"Every person and every corporation that shall violate any of the provisions of sections 401, 403, and 404 of this title or any rule or regulation made by the Secretary of the Army in pursuance of the provisions of section 404 of this title shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $2,500 nor less than $500, or by imprisonment (in the case of a natural person) not exceeding one year, or by both such punishments, in the discretion of the court. And further, the removal of any structures or parts of structures erected in violation of the provisions of the said sections may be enforced by the injunction of any district court exercising jurisdiction in any district in which such structures may exist and proper proceedings to this end may be instituted under the direction of the Attorney General of the United States."

ing only the prior enumeration of obstructions in the preceding sections of the Act. The argument is a labored one which we do not stop to refute step by step. It is unnecessary to do so, for the Court in *United States v. Rio Grande Irrigation Co.,* 174 U.S. 690, 708, 19 S.Ct. 770, 43 L.Ed. 1136, decided not long after the 1890 Act became effective, gave the concept of 'obstruction,' as used in § 10 a broad sweep: 'It is not a prohibition of any obstruction to the navigation, but any obstruction to the navigable capacity, and anything, wherever done or however done, within the limits of the jurisdiction of the United States which tends to destroy the navigable capacity of one of the navigable waters of the United States is within the terms of the prohibition.' This broad construction given § 10 of the 1890 Act was carried over to § 10 of the 1899 Act in *Sanitary District v. United States,* 266 U.S. 405, 429, 45 S.Ct. 176, 69 L.Ed. 352, the Court citing *United States v. Rio Grande Irrigation Co., supra,* with approval and saying that § 10 of the 1899 Act was 'a broad expression of policy in unmistakable terms, advancing upon' § 10 of the 1890 Act." (362 U.S. at pages 487–488, 80 S.Ct. at page 888)

"The teaching of those cases is that the term 'obstruction' as used in § 10 is broad enough to include diminution of the navigable capacity of a waterway by means not included in the second or third clauses. In the *Sanitary District* case it was caused by lowering the water level. Here it is caused by clogging the channel with deposits of inorganic solids. Each affected the navigable 'capacity' of the river. The concept of 'obstruction' which was broad enough to include the former seems to us plainly adequate to include the latter." (at page 489, 80 S.Ct. at page 889)

■ From *Republic, supra,* it is evident that a § 12 mandatory injunction may issue in all cases under § 10. But it also must be made clear that *Bigan, supra,* itself never dealt with the proposition of whether or not a § 10 obstruction included one resulting from negligent conduct. Any reliance by

the defendants that it did and that it stands for clear Third Circuit law is unfounded.

■ As a result of the broad interpretation given to § 10 in *Republic, supra,* not including a sunken vessel, negligently sunk or not, within the meaning of "obstruction" as used in § 10 would severely narrow the Act's purpose. That the United States has sovereign power to remove obstructions to interstate and foreign commerce is the main purpose which this Act fulfills. *Sanitary District of Chicago v. United States,* 266 U.S. 405, 45 S.Ct. 176, 69 L.Ed. 352 (1925), as the Court re-affirmed in *Republic, supra* :

"The test was whether the United States had an interest to protect or defend. Section 10 of the present Act defines the interest of the United States which the injunction serves. Protection of the water level of the Great Lakes through injunctive relief, *Sanitary District v. United States, supra,* is precedent enough for ordering that the navigable capacity of the Calumet River be restored. The void which was left by *Willamette Iron Bridge Co. v. Hatch, supra,* [125 U.S. 1, 8 S.Ct. 811, 31 L.Ed. 629], need not be filled by detailed codes which provide for every contingency. Congress has legislated and made its purpose clear; it has provided enough federal law in § 10 from which appropriate remedies may be fashioned even though they rest on inferences. Otherwise we impute to Congress a futility inconsistent with the great design of this legislation. This is for us the meaning of *Sanitary District v. United States, supra,* on this procedural point." (at page 482, 80 S.Ct. at page 890)

■ A barge, whether negligently or intentionally sunk in a navigable river of the United States, to further the purpose of the Act and not narrow it, is included in § 10 as an obstruction. Given the broad yet clearly rational interpretation, the defendant Ohio Barge cannot claim that the Government has no in personam cause of action against it. Nowhere is it suggested that the navigable capacity of the particular waterway

was not incapacitated, or there was no need for a helper boat. The motion to dismiss this action concerns only the Government's standing as such to bring suit to recover the cost of a helper boat under the Act.

■ If, as above shown, the Government, pursuant to the Act and its inferences enunciated by the Supreme Court, has the power to protect the navigable capacity of our rivers, to insure that mandatory injunctions will issue to remove obstructions from the waterways whether they be man-made or natural, to have the inferential power to be reimbursed for their own efforts, it would seem that to hold that the Government could not be reimbursed for protecting the safety of others during the removal operation of barges negligently sunk would be contrary to the spirit of the Act and cases that interpret it.

■ As for the motion of the defendant Forwarder to dismiss on the basis that the Government has no cause in rem under § 10 and § 15 of the Act, the same reasoning for § 10 above would apply here. Additionally *Wyandotte,* supra, n. 11, page 199, 88 S.Ct. page 385, held "that the prohibition of § 15 against the negligent sinking of a vessel and the criminal penalties of § 16 are not limited to owners." Thus the Government would have an in rem action against the Forwarder, the vessel owned by the defendant Ohio Barge and tower of the barges as well as an in personam action against the owners, even if on alternate theories of recovery. *United States v. Cargill,* 367 F.2d 971, C.A. 5, 1966.

Accordingly, the motions to dismiss as filed by the defendant, Ohio Barge Lines, Inc. and the defendant, M/V Steel Forwarder, will be denied.